# UNITED STATES DISTRICT COURT
## for the
## Eastern District of Virginia
## Alexandria Division

*Amended Complaint.*

|  |  |  |
|---|---|---|
| LOREEN L. LISLE on behalf of herself and her two children | ) | |
| | ) | |
| Plaintiff | ) | Case No: 1:24cv595 |
| v. | ) | |
| Lloyd J. Austin, III, Secretary, U.S. Department of Defense | ) | **Jury Trial Requested** |
| Via | ) | |
| Vice Admiral Frank D. Whitworth III, Director National Geospatial-Intelligence Agency | ) | |
| Defendants | ) | |

2024 APR 22 P 2:58

## COMPLAINT FOR A CIVIL CASE

1. Loreen L. Lisle ("Plaintiff") (Pro Se), hereby file this complaint of discrimination and retaliation against Defendants; Lloyd J. Austin III, Secretary of Defense and Frank D. Whitworth III, Director, National Geospatial-Intelligence Agency (collectively "Defendants," "NGA," or the "Agency"), as follows:

### OVERVIEW

2. NGA is tasked with delivering strategic intelligence to the President of the United States on counterterrorism of their enemies. Its techniques enable battlefield superiority and targets its adversaries to protect the US. Plaintiff Lisle, a five-time war veteran, now alleges that this Geospatial-Intelligence closed-door environment, is a landmine filled with discrimination based on Race, Gender, Veteran, Disability, Age, National origin, and Retaliation. She alleges that NGA maintains a biased culture replete with harmful stereotypes regarding its racial minorities and female employees that infect its policies, processes, and decision-making,

including, performance, compensation, and professional development. These Agency-wide policies and practices not only results in lower pay and performance appraisals and fewer promotions for racial minorities and women but for this victim, who once believe the intelligence community was once the pinnacle of achievement now sees NGA as the burial ground for her American hopes and dreams.

3. Plaintiff Lisle files this lawsuit to hold NGA accountable for its unlawful treatment of racial minorities and women and to achieve meaningful reform for others following behind her. Plaintiff brings this lawsuit because she was subjected to and harmed by the NGA's agency-wide pattern or practice of disparity in treatment and retaliation and discriminatory policies and practices. This action seeks relief because of NGA's entrenched racial and gender discrimination and retaliation and requests the Courts to make-whole relief.

## I.  The Parties to This Complaint

### A.  The Plaintiff

Name:   Loreen L Lisle ("Lisle")

Street Address:  8792 Brook Estates Court

City and County:  Lorton and Fairfax County,

State and Zip Code: Virginia, 22079

Telephone Number:  (703) 334-1114

Email Address:  Loreen.Lisle@gmail.com

4. A black, Jamaican-American woman, disabled veteran who was employed by the NGA Contracts Office for seven years, after 21 years of exemplary service in the United States Air Force (USAF).   As an immigrant, she has climbed the ranks from Airman Basic to a Major in service of her country. Lisle has competently discharged all duties assigned to her and enjoyed an excellent reputation with regards to the high quality of her work and her conscientious devotion and integrity to her job within the United States Air Force for over 21 years. She spent four years as a Professor of Contracts Management at the Defense Acquisition University and served in five contracting deployments supporting the war on terrorism. She has worked with the Defense Contracts Management Agency for over three

years where she held an unlimited Contracting warrant and performed Program Management reviews on federal agencies, and she deployed in support to all the military services. She supported the Army during their Contracting Fraud Investigations in both Iraq and Kuwait that eventually led to the Army's Contracting Reform. Like many minorities and female personnel at NGA, Lisle has endured NGA's pattern or practice of discrimination and Agency-wide discriminatory policies. The National Geospatial-Intelligence Agency subjected Lisle to discrimination and retaliation.

**B. The Defendant (s)**

Name:   Lloyd J. Austin, III, Secretary of Defense

Government Organization:  United States Department of Defense

Street Address:  1600 Pennsylvania Avenue, NW,

City and County:

State and Zip Code: Washington DC 20500

Telephone Number: (202) 456-1111

Email Address: Unknown


Name:   Frank D. Whitworth III, Director,

Government Agency:  National Geospatial-Intelligence Agency,

Street Address: 7500 GEOINT Dr,

City and County: Springfield and Fairfax County

State and Zip Code: VA  22150-7500

Telephone Number: (571) 557-5400

Email Address: Unknown

They are being sued in their official capacity.

The following personnel are being sued in their official capacity: Plaintiff reserves the right to file civil suits against individuals in the court allotted timeframe.   Kelly Pickering  Director; Anthony Fugate –Supervisor;  Danita Ladson – Supervisor;  Howard Pierce – Group Chief; Tammie Verdon- Group Chief; Dea Merchant—Deputy Director  Jack Rickert – NGA Counsel; Karen Palmer – Supervisor;  Patsy Coleman, EEO Counselor; Nicole Pierce – Director/OCS;

Shaun William – EEOC Counselor, Patricia Hill – Band 05 Team Chief; Angelo Papalardo – Second Line Supervisor , Patrick Malaney OCSA -Second Line Supervisor; Dyah Goodman Senior Leader;  Cardell Richardson Both EEO and IG Directors during Lisle's tenure;  Beth Flannigan, NGA EEO Director,   Robert  Cardillo, NGA Director;    Justin Poole, NGA Deputy Director.;  Nancy Spaulding NGA Investigator

The Defendant:  The National Geospatial-Intelligence Agency is a combat support agency within the United States Department of Defense whose primary mission is collecting, analyzing, and distributing geospatial intelligence in support of national security.

## II    Basis for Jurisdiction

5.  In accordance with Local Civil Rule 3.  The Eastern District of Virginia consists of Alexandria Division.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). The complaint is about the violation of federal laws and the US Government is a party to this litigation.   The NGA (Government) is headquartered in this District. Throughout her tenure at the NGA, Plaintiff worked for and was harmed in this District. The unlawful conduct alleged in this complaint occurred in this District.

## A   Basis for Jurisdiction,

Plaintiff claims arise under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.("Title VII"), the Equal Pay Act, 29 U.S.C. § 206(d), the Americans with Disabilities Act, ("ADA"), Violation of Uniformed Services Employment and Reemployment Rights Act (USERRA) 38 U.S.C. § 4303;  42 U.S.C. § 12112, et seq.42 U.S.C§ 1985 Conspiracy to interfere with Civil Rights; Unlawful and unreasonable, and claims against other  unlawful employment practices. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, and 1343.

## III.   Statement of Claim

Plaintiff Loreen L. Lisle was extremely qualified in Acquisition and gained extensive experience in regulatory compliance requirements before she arrived at NGA and had all the relevant qualifications and training for the Contracts Career field when she was hired by NGA. **(Exhibit A).**   NGA received a failing grade in Acquisition as briefed by a Senior NGA Leader and there were very questionable actions/decisions by some of its

leadership **(Exhibit B)**.  Over the seven years, Lisle endured disparity in treatment based on multiple bases of Race, Sex, National Origin, Retaliation, Age and Disability and was terminated on 5 March 2021 **(Exhibit C)**.  NGA has fragmented the cases and Plaintiff have requested during the administrative processes that the Agency combine the piecemeal cases for her to present integrated and coherent claims of the unlawful employment practices she endured at NGA for which there are remedies.   (Plaintiff Lisle considers the seven years of incidents that occurred to her in NGA closed-door environment as abuse when she filed complaints with the Department of Justice in 2019.

**(Exhibit AE)**          **Demand: JURY DEMAND**

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981.

Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, guarantees persons of all races the same right to make and enforce contracts, regardless of race. The term "make and enforce" contracts include the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, and conditions of the contractual relationship.

6. On September 8, 2014, Lisle onboarded after an interviewed for and was offered a Federal Civilian position within NGA Springfield VA Campus, assigned to the office of Contracts Services, as a Contract Specialist (IA 04) with the direction that NGA did not hire external candidates at a Band IA 05, therefore she had to wait 6 months before she could be qualified for her desired rank which was a IA 05 much like Katherine Gadway (white female) did . Lisle's immediate supervisors were Jonathan Mostowski (white male and her former student), Team Lead Demetris Green, later Kimberly Kleeb, later Danita Ladson, later Karen Palmer, later Anthony Fugate; her second line supervisors were Nina Curtis, later Patrick Malaney, Dale Rainey, Angelo Pappalardo.    The third Level supervisors were Dea Merchant, Tammie Verdon and Howard Pierce.    The two Directors were Nicole Pierce and Kelly Pickering.
Ombudsman:   Gary Hill
EEO Directors:  Cardell Richardson (IG Director also) and Beth Flannigan
Deputy Directors: Justin Poole, Susan Gordon, and Stacey Dixon     Agency Directors: Robert Cardillo and Admiral Robert Sharp

Lisle contacted numerous oversight organizations and watchdog groups within her protected channels begging for help and safety while she worked within NGA closed doors.

7. NGA maintains a nationwide set of uniform, discriminatory employment practices and engaged in a pattern or practice of systemic race discrimination against racial minorities that constitutes illegal intentional racial discrimination in violation of 42 U.S.C. § 1981. Through the conducts alleged herein, NGA denied Plaintiff and other racial minority Contract Specialists opportunities and resources valuable to their career because of their race and based on racial stereotypes. Defendants also discriminated against Plaintiffs compensation, performance evaluation, professional development, training, promotions, and in other terms and conditions of their employment.

8. Based on its published FOIA report, "The State of Black Promotion at the National Geospatial-Intelligence Agency.   NGA Diversity and Inclusion Study", **(Exhibit B …Unclassified Diversity and Inclusion studies)** The Agency has and is engaged in a pattern and practice of race and gender discrimination and maintains policies and practices that have a disparate impact on racial minorities and females to include Plaintiff. Based on the Ombudsman facilitated self-assessments of the Office of Contract Services.

9. Minorities and Blacks have been begging IC and DOD Leadership to help them from what is perceived as entrenched institutional disparity in treatment behind NGA closed-door.

**Former NGA Employee published Article: (Exhibit D)**

https://www.ksdk.com/article/news/investigations/federal-agency-admits-to-years-of-racial-discrimination/63-587359549

NGA Former Employee on NGA Culture

NGA and EEOC Baltimore Office Admin. LJ colluded to dismiss NGA Black employees EEO complaints.

https://m.youtube.com/watch?v=_4KRaLRyQa4

NGA Former Employee on Jack Rickert

https://m.youtube.com/playlist?list=PL3dslrwHi5x13mtuUaNOyxMD0zfTHklRh

10. NGA maintains stereotypical views about the skills, abilities, and potential of its racial minority and female employees that form the basis of its policies and practices and result in the segregation and differential treatment of minorities and women during Plaintiff employment,

NGA has engaged in a pattern and practice of unlawful conduct toward its minority and women employees and Plaintiff Lisle, including but not limited to the following:

A. Refusing to place her in positions commensurate with her qualification, expertise, skills, tenure when compared to white and male employees.

B. Excluding her from training and developmental opportunities that are consistently offered to white or male employees.

C. Excluding her from details, projects and other assignments that are regularly offered to white or male employees.

D. By selectively providing special projects and detail assignments to non-African Americans and males, NGA steered more desirable assignments and promotions to whites and males. For example, the NGA gave a special detailed assignment to Eric Rodriguez (male), who did not apply for the program, while Lisle who did was denied **(Support provided)**

E. Denying her access to systems required to do her job.

11. **2 April 2015, Lisle applied for a leadership position and was later told that she lacks NGA experience and did not have "the breadth and depth" (Exhibit E).** She later learned from other black employees that this was "coded statement" to deny minorities leadership positions within the Agency and Lisle addressed the alleged violation. Lisle was then invited to a group email traffic of senior level black personnel who were concerned about the disparity of treatment based on race and sex. Fearing the EEO process, Lisle offered to relay the information to Ms. Nina Curtis, her 2nd level supervisor. The email group included Penny Wells (GS-15), Doris Collier (GS-14), Patricia Hill (GS-14), Danita Ladson (GS-15 recently promoted) Cathy Smith (GS-14) and Plaintiff Lisle (GS-14). Lisle provided the protected disclosure to Ms. Nina Curtis and Ms. Kim Kleeb. **(Exhibit E)** The email group minus Danita Ladson and Penny Wells met frequently on Sundays to discuss how to implement positive change in the organization. She was told later by Mr. Jimmie Griffin (white male) that her leadership in particular, Tammie Verdon did not like what she did.

12. Throughout her NGA employment, Lisle was denied the training and mentoring opportunities that were provided to her white male colleagues. For example, she was denied mid-term feedback that were provided to white and male counterparts and required by NGA Policies **(Exhibit F)**.

13. In 2014-2015, under Ladson and Malaney supervision, Plaintiff Lisle submitted two requests to take advantage of the Agency's Advantage Fitness program, her requests were not acknowledged while other whites and males were. She followed up several times. Her requests were willfully, knowing and intentionally removed from the system **(Exhibit G)**

14. The Agency also improperly denied Lisle promotions, promotion opportunities and created instability with five supervisory transfers within eight months. For example, although she met the requirements to be nominated for promotion, the Agency denied Lisle the nomination. Provided her with lower rating than those that were provided to her white, male counterparts.

## COUNT II
## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

15. Plaintiff engaged in protected activity by complaining of her unlawful treatment and opposing NGA's discrimination in violation of 42 U.S.C. § 1981. Plaintiff suffered retaliation and harm because of her protected activity, in violation of 42 U.S.C. § 1981.

16. On 1 April 2015, Lisle engaged in protected disclosure with her supervisor Nina Curtis, and shortly after she was not provided with developmental opportunities, denied midterm feedback, and given low evaluation ratings **(Exhibit E).**

17. Nov 2015, despite her dedication and demonstrated job performance at NGA, the Agency has treated Lisle less favorably than her white, male counterparts and retaliated against her for complaining about her discriminatory treatment. On her task, she had worked hard to fix the contracting processes to become in alignment with the regulations and her supervisor provided Lisle with a rating that was below her job performance. The documentation clearly reflected a "cut and paste" job as Ladson and the Agency recognized Lisle as "Mr. Lisle" during her evaluation. On or About November 2015, Plaintiff requested a reconsideration on the of 3.3 rating to be objectively aligned based on her job performance and it was raised to 3.4. Her rating was considerable low compared to her white male counterpart who shared that he received a 4.6 rating for the same program that they both worked on and lower than that of her supervisor Danita Ladson **(Exbibit E-1)**

18. Unaware, On or about 17 May 2016 Ladson and Malaney started taking materially adverse actions for Lisle's removal. 18 May 2016, HD reached back to Ladson in an email to let

her know she spoke to her team lead, and she apologize in advance "but due to her veteran status, Lisle gained the same rights as a regular employee.  Your ability to remove her would not be the same as a standard probationary period employees".**(Exhibit H)**  13 Jun 2016 without any advance notice or discussion,  Ladson took adverse action against Lisle and provided her with an informal Opportunity improvement plan (OIP) **Exhibit H-1)**. There was no legitimacy to the plan and no such thing in the regulation as "informal" plan. Nervously, Ladson assured Lisle the OIP was not a disciplinary or adverse action but merely an informal process.   Lisle addressed her concerns to Malaney, HD, EEO and the Contracting Director, however, was mandated to comply.  Lisle researched the regulations and discovered the plan had affected her monetary compensation and official records.   The plan had punitively disqualified her from DOD monetary incentives for contracting professional.  At that time, based on her tenure, experience, skill and qualifications, Lisle was the second highest recipient of that incentive. The plan also affected her opportunity to compete for promotion.  Although Ladson was required to meet with Lisle on Thursdays at 10:00 in the One-on-One Room and Lisle made numerous attempts to get the feedback, Ladson and Malaney denied Lisle the feedback.

19. Jun 2016, shortly after Lisle engaged in protected disclosure, Danita Ladson, openly and publicly yelled at her and talked down to Lisle.  Furthermore, her maxi-flex schedule was rescinded.   Although Lisle had previously received exemptional ratings and lauded feedback concerning her communications skills in her previous assignments, she was now given marginal ratings and was reprimanded for her lack of ability to communicate due to her Jamaican accent and was given an unsatisfactory 2.0 for communication and performance rating for 2.4.  Her assignment of complexity was stripped from approximately $1.4B to $1.32M.  These actions and treatment that she endured were not given to males or whites.  Lisle rebutted **(Exhibit H-3)**

20. For example, Lisle has been consistently paid less because of discriminatory low ratings than similarly situated white and male colleagues at the Agency of her qualification, skillset and expertise, including Male Contracting Professional. (Reasonable believe I have those statistic)

21. In addition, Lisle's performance evaluations did not accurately reflect her performance, because the Agency failed to assign work assignments equally: Lisle was assigned tedious

task such as decades of dormant irreconcilable closeout contracts that previously
Contracting Officers failed to take the proper job requirements. They took longer to close,
while "source selections" that provided visibility and required strategic thinking and that
required little time to complete were given to male and whites. When she successfully
accomplished one, Patrick Malaney said she did not deserve any credit.

22. NGA employed a quota system to measure employee productivity that place minorities and
Lisle in a "workabee" long term more complex contracting assignments that required
cleaning up years of abuse of regulations and denying them proper credit for work done and
placed the whites and male personnel in the "visible and promotable" positions for work that
they did not accomplish.

23. Failing to credit Plaintiff for her achievements, experience, skillset, qualification on the
same basis as white or employees and failing to consider her for timely promotions and title
changes on the same basis as whites or men.

24. Although a protected Veteran, NGA <u>tried to</u> deny her conversions from "conditional term"
to permanent status on the same basis as white or male employees; fail to provide her
veteran credit and when identified during the Equal Employment Complaints process the
Agency fixed documents to interfere with a fair and just process **(Exhibit H)**

25. Agency willfully, knowingly, and intentionally and systematically paid her lower wages
and/or denying her every opportunity to increase her earnings unlike the opportunities that
were provided to whites and male.

26. 2016 Although Lisle provided all the required documentation during the onboarding,
establishing her disabled veteran status, Ladson and Malaney failed to approve her for a
disabled veteran leave program that was unique to NGA, while they provided the benefit to
male and white employees.

27. October 2016, Lisle was issued a 2.4 overall rating and 2.0 for communication because of
her accent. **(Exhibit H-3)** Once Lisle realized the full extent of the discrimination within the
Agency, Lisle openly challenged those policies and the discriminatory methods for
determining who received promotions and training and unequal pay. **NGA retaliated
against Lisle and other minority employees who spoke out about discrimination and
participated in the EEO process, so she delayed using the NGA EEO System at first.**

28. **17 November 2016   In her rebuttal, Lisle identified barriers to OCS effectiveness. Inconsistent policy enforcement, Poor Communication, and lack of standardization within the acquisition process. She addressed the mistreatment of understaffed, overworked, under trained, under supported and undervalued contracting personnel and a culture that harms the rights, dignity, and wellbeing of its personnel.   Lisle identified the failure of OCS to adhere to laws, rules, and regulations and identified gaps within OCS acquisition process (Exhibit H-4)**

29. December (2016-2017)   After Lisle received substandard rating, denied her incentive bonus, and denied opportunity for promotion.  On 17 October, the Agency then colluded to lower Lisle ratings and smashed Lisle's goals **(Exhibit H-5)** She had expressed desires to follow in Kat Gadway's footsteps with OCS.  Nov- Dec 2016 Lisle sought relief from the adverse 2.4 performance rating which had void her opportunity for promotion and professional development, the Agency choose Heidi Smaith as the decision maker.  The Decision maker was asked to investigate the leadership who controls her own hiring and firing.  A conflict of interest and a violation of NGA's own Policy.  After  Lisle reviewed documentation that the Agency was graded an "F" in Acquisition, other communications from the Inspector General, Ombudsman and feedback from the NGA Director explaining the Agency was evaluating "a systemic disadvantage to various categories of employees," Lisle went to discuss discrimination with NGA EEO in Dec 2016/Jan 2017 and filed a complaint of discrimination and retaliation with the NGA's Equal Opportunity Office ("EEO") on or about 11 January 2017. NGA had retaliated against Lisle for providing "protective disclosure", by providing her a rating of a 2:24 on a scale of 5, that denied her incentive bonus, any opportunity to compete for promotion, or developmental opportunities for two years and along with the recommended her termination. The punitive actions did not occur to her white or male counterparts.  The Agency furthermore retaliated with adverse actions.

30. Lisle was frequently passed over for training opportunities which stagnated and crippled her promotional development.   For example, NGA offered leadership training and developmental opportunities to whites and male but never chose or often denied Lisle **(Exhibit J NCMA training and Kat Gadway)**

31. In 2016 while assigned to Patrick Malaney, Plaintiff Lisle communicated her desire to be considered for NGA Warrant and resume her signing authority and the level of responsibility that DOD had approved based on her achievement.   She had unlimited signing authority from DOD **(Exhibit A-4)**.  Although she requested the warrant on numerous occasions, she was denied by Mostowski and Malaney (white male) while Malaney offered warrants to new white males entering the OCSA organization after Lisle and who had far less contracting qualification **(Lloyd Johnson, Bladley Austin, James Lane (white males)** The Agency even provided junior white males, with the very minimal expertise empowerment over Lisle.  Plaintiff did the work while white males retained the training and credit. **(Exhibit K)** In addition, to further discriminate against Lisle, The Agency placed non-contracting personnel Anthony Fugate, a white male and cross trainee to contracting organization in the supervisory contracting role that Lisle had previously shared a desire for. Fugate was never in the Contracting Career field, and he was tasked to supervise contracting officers, a violation of DAWIA Law **(Exhibit K)** and NGA Policy.  The Agency promoted developing white interns with 5 years to Pay Band 05, personnel that Lisle trained and mentored and denied Lisle promotion with 25+ years of years of experience and the Agency's acquisition requirements continued to continue to grow.

32.  Lisle questioned Fugate's position as a Contracting Supervisor in accordance with DODI 5000.66? and the Agency retaliated against Lisle.   In addition, Lisle questioned Fugate's authority to direct contractors on issues that affect the financial management of Government contracts. These were all actions that violated laws.   The Agency retaliated and took materially adverse action against Lisle.

33. Plaintiff Lisle endured discrimination for over <u>seven years until</u> she was terminated on 5 March 2021 **(Exhibit C)**. The discriminatory policies and practices at NGA are uniform and national in scope and have negatively affected Lisle's children's rights. Collectively they have endured tremendous trauma because of Lisle working within NGA closed doors that lacked the proper oversight and was harmed by these NGA policies and practices **(Exhibit L).**

34.  Lisle request for EEOC help resulted three in cases with EEOC No 570-218-00147X, EEOC No 570-2020-00374; EEOC No 570-2021-01137X, a Mixed Case with the Merit Service Protection Board and an Informal Class Action Lawsuit on the bases of race and sex

that the Agency failed to process and terminated Lisle two weeks later **(Exhibit M)**.   The Agency fragmented the claims that compromised Lisle's ability to present an integrated and coherent claim and made it extremely difficult to prove within the EEOC System.

35.   March 2, 2018, amended her discrimination allegations under her same bases of race, sex, national origin, and retaliation to include further retaliation.  She was involuntarily moved to the Policy department for adverse actions.   Once she realized the full extent of the discrimination within the Agency, Lisle openly challenged those policies and the discriminatory methods for determining who received promotions and training and unequal pay.  NGA retaliated against Lisle.

36.   After she complained and challenged the promotion process and addressed waste and abuse in the acquisition process, NGA and Ladson took action to terminate Lisle.   When Lisle took EEO action, Ladson allowed to serve an extraordinary amount of Reserve details continuously which coincided with her being absent in giving supporting statement during EEO investigations.

37.   OCS had a restructuring process where they allowed employees to move to different departments and other IC Organizations to evade accountability and evade the ability to testify in pending discrimination complaints.

38.   Lisle requested a change to the Program side, however, denied that developmental opportunity, even when the Program side requested her.  Her desire to do so was well-known to NGA management.   She later received an email from PeopleSoft, indicating that she would be moved to OCS Policy.   The move was postponed from 11 December to 29 December to correct an alleged OCS violation **(Exhibit O)**.   This was not done to white or male.

39.   The OCS relied on Lisle as an unofficial mentor and supervisor and trainer of new employees, however, refused to give her credit or recognition **(Exhibit N)**

40.   Lisle applied for numerous positions; for most of them, the Agency did not interview her or respond to her application in any way. Notably, when Lisle applied for a permanent position in Policy that Judy Hart and Anthony Fugate competed for, the Agency did not select her even though she was currently working in OCS Policy, was in the contracting career field and was extremely qualified and competent for the position. **(Exhibit N-1)**

41. After the Agency dispatched security personnel to Lisle home, Lisle worked in constant fear for her and her minor daughter's safety and well-being.   Because of the trauma, Lisle lives with heightened anxiety, recurring depression, and insomnia because she felt NGA was going to harm her and her children.  She started to lose her hair and required medical care. The Agency did not dispatch security when they did not know the whereabout of white or male.   When NGA did not know the where about of Adam Greenspan (white male) security was not dispatched.   In fact, unlike Greenspan, Lisle was in the NGA building at work as directed by her supervisor Karen Palmer.

42. As a result of NGA's conduct, Lisle has suffered substantial damage. Lisle has lost wages and other benefits, suffered embarrassment and humiliation, endured medical trauma and her career has been irreparably damaged.

43. Plaintiff sought the Protection under the Whistleblower Protection Act and the No Fear Act. Plaintiff sought protection from the Three IC IGs. Plaintiff sought protection from most of the oversight organizations within the protected channel and received no help because of her race and sex.  Directors (Poole, Cardillo, Sharp), DOD Reprisal IGs, The Three IC IGs, OPM to intervene, Secretary of Defense, Congressional Representatives **(Exhibit P)**

## COUNT III
## RACE AND GENDER DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e et seq.

44. Plaintiff filed individual Complaints with the NGA's Equal Employment Opportunity ("EEO") Office and have exhausted their administrative remedies.

45. Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and/or gender, or to limit, segregate, or classify its employees or applicants for employment in any way which deprives or tends to deprive any individual of employment opportunities or otherwise adversely affects his or her status as an employee on the basis of race.

46. By their conduct as alleged herein, Defendants unlawfully discriminated against Plaintiff in violation of Title VII, under both disparate treatment and disparate impact theories of liability.

47. Plaintiff reallege paragraphs 10- 43 and incorporate them by reference as thorough fully stated herein as part of Count III of this complaint.

48. On November 2, 2017, Palmer told Lisle to find another job outside of NGA.   During the same meeting she failed to change she failed to change the FY performance evaluation even though she agreed to make the changes.  Palmer did not do that to white males.

**49.** In December 2017, After Lisle asked Palmer to leave the unapproved leaves in the PeopleSoft system the internal HR PeopleSoft System as evidence that were not approved under Ladson's supervision – she changed the status to approved **(Exhibit Q)**

50. Additionally, when the system generated emails to notify her of pending move, it was delayed because of violation of policy.  **(Exhibit Q-1)**

51. Plaintiff initiated her EEO complaint in late December of 2016 based on race, color, sex, national origin and retaliation and subsequently have amended three separate times.   The Agency solely, willfully, and intentionally made the determination to fragment the complaints in a way to ensure they were not coherent within the EEO Systems. Furthermore, all three were dismissed.

52. NGA have <u>violated each of the required reconsideration and EEO timelines</u> and have colluded to deny Plaintiff's constitutional rights.

53. Other minority personnel were seeing and undergoing similar discrimination in OCS reached out to a black SES Ronzelle Green for help.   Lisle did not at that point.   Green initiated a conversation with Lisle in passing to inquire on the culture.   He noted he would send a meeting invite to a few of the personnel who stopped by to have an open discussion.   He sent a email that included Johnetta Williams, Patricia Hill and Plaintiff Lisle.   Lisle learned later it was one of several emails.   Several of the minority female were in attendance.   Williams and Hill did not attend.   Shortly after the meeting, Lisle ask Green if he could accompany her to speak to the Director as a neutral party.   He agreed.   Like many personnel who can or could possibly act as witnesses (Bowling, Broadnex, Wilson) SES Green was removed too **(Exhibit R)**

54. Between 21 March 2017 and December 2018, Lisle underwent a host of scrutiny from Palmer **(Exhibit S)**

Lisle identified another broken process in NGA acquisition process that forces personnel to sign for supplies and services before the government receives it. If customers don't— they are penalized. **(Exhibit S-1)** NGA retaliated. 18 Jan 2018, during a quarterly feedback self-assessment feedback session held with Karen Palmer, Angelo Pappalardo and an HD representative. The session became adversarial.  Angelo Pappalardo requested that Lisle have a talk with Gary Hill, the Ombudsman.  Karen and Lisle were required to

meet and discuss the discriminatory practices with Hill for many sessions. Palmer admitted she was not knowledgeable in Contracting. It is Lisle's understanding that the Ombudsman did not report the discriminatory allegations up the chain of command.
19 Jan 2018 Lisle Compensatory time was not approved (**Exhibit S-2**)
On February 13, 2018, OCS failed to recognize Lisle for work accomplished March 14, 2018, Karen Palmer, Lisle's first-line supervisor, accused her of delegating work to Monica Meade. 7 September 2018, Lisle requested that her EEO complaint be amended to include the base of retaliation. Her managers consistently refused to assign responsibilities that were commensurate with her skills and experience and wanted to assign her. Plaintiff will address a few. The remainder is provided in attachments.

Palmer informed Lisle to find Job elsewhere when she Lisle challenged her evaluation rating. When evaluation was reviewed by personnel outside OCS organization and an objective investigation was accomplished, Palmer's evaluation rating of Lisle was changed to an excellent **(Exhibit T)**

November 2018 – January 2019 – Both Palmer, Fugate and Pappalardo colluded in retaliating against Lisle and NGA Leadership was aware and did nothing.

55. On or about February Fugate became Lisle's supervisor. His retaliations were unsafe and unjust and jeopardized Lisle's health and safety. He confirmed that he is great friends of Angelo Pappalardo, and it was said that he had the support of NGA leadership.

56. As a cross-trainee, non-contracting personnel, Fugate issued an adverse action on April 1, 2019. About two months after he became a supervisor, he issued a 30-Day OIP to ensure Lisle took an upcoming test warrant test **(Exhibit U).** These actions were not done to white male. White males were given the test **(Gary's/ Mil Investigation result)**

57. January 2019, in collusion with OCS leadership Howard Pierce issued Lisle an adverse 3-day suspension and plaintiff provided a rebuttal **(Exhibit U)**

58. March 2019 -- Plaintiff was under duress and feeling sick. She was having a hard time concentrating or sleeping and sought help from her Medical Provider and the IG. The Agency retaliated against her by denying her request for a reasonable accommodation that was recommended and approved by her Primary Care Physician from the Military installation and the Agency referred her to an Insider Threat Investigation **(Exhibit  )**

## COUNT IV
## RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e et seq.

59. 21 March 2017, Lisle was provided with generic evaluation that was geared towards the buying organization while she was in Policy

60. On December 2017 Palmer made it difficult to respond to request for information related to prior EEO Complaint, falsely accused Plaintiff of not setting up a warrant Board briefing, and placed extreme urgency on the protest data however that data was not used until four months later.

61. May 2017 while Lisle was dealing with the terminal illness and death of her mother, Palmer harassed about leave and falsely claimed Lisle was not updating leave on her calendar. Palmer had created two separate calendars.

62. 1 November 2017, Lisle's performance feedback session changed four times and was eventually performed thirty days after the rating period ended and everyone else received their feedback. During that time nominations packages for professional development and promotion are initiated.

63. In October 2019, Plaintiff Lisle addressed a conflict-of-interest issue with sourcing a new contractor and asked her to recuse herself. Plaintiff identified the conflict of interest with providing oversight to a Small Business and because of her close relationship with the owner because they worked side by side together in the military. In addition, he helped her get a job being a contractor for NGA for 6 months. She was aware how small businesses were set up for failure within NGA with unrealistic procurement lead timelines and bona fide need rule that place small businesses at a disadvantage. Fugate (non-contracting professional) told Lisle to do otherwise and took adverse action because of her request to recuse herself. **(Exhibit W)**

64. Timeline, Issues and adverse Actions under Fugate's supervision **(Exhibit W)**
Like Ladson and Palmer, Fugate supervisory role and task was to orchestra Lisle termination. He threatened Lisle with a low evaluation rating at the start of the supervisor and like Ladson, issued Lisle an unjust Opportunity for Improvement to mandate that Lisle took a contracting test that was scheduled for 5 April 2019. The warrant policy leaves it up to the test taker to prepare and determine readiness.

65. Between March 7 and July 2019, the Agency denied Plaintiff reasonable accommodation request.

66.    May 2019 to October 2019 -- Fugate, Pappalardo, Howard Pierce and Dea Merchant
threatened her that she would get a mediocre performance rating if she did not provide the
closed and ready to close reports information and data from those reports that were
extremely inaccurate due to decade of neglect and abuse. This request was outside of her
scope of performance as this was with the PRISM office mission.  Personnel manipulated
the data so that the information would reveal a lesser than normal workload.  This data
was the responsibility of another department (Prism) therefore there were dependencies
out of Lisle's control.  Her performance appraisal reflected a 1.0. **(Exhibit X)**

67.    In June 2019, she learned from the Family Medical Leave Program Manager (FMLA) that
Fugate challenged her request and attempted to prevent her from using the FMLA Leave
after he denied her reasonable accommodations and he tried to interfere with her (FMLA)
he provided Lisle's personal information (Gmail and phone) to an investigator to call her
at home while she was on FMLA Leave and threaten future adverse actions against her
upon her return from FMLA **(Exhibit Y)**

68.    Early January 2019, Lisle inquired if Fugate had the authority to be a Contracting
Supervisor in accordance with accordance with the Defense Acquisition Workforce
Improvement Act (DAWIA), enacted by Public Law 101-510 in 1990 --in particular her
supervisor.   As a cross-trainee into the contract organization, he was on a broadening
detail.   She inquired and leadership failed to respond. **(Exhibit S)**

69.    February 2019 – June 2019 Lisle was continuously locked out of the computer system,
printer, and network as she attempted to print unclassified evidence of the discriminatory
practices she was enduring.   It was almost impossible to complete mandatory training or
access the programs.   Lisle often had to find workarounds to accomplish tasks.  She even
engaged Fugate who provided off printing off documents and inputting necessary timecard
so she could get paid (Exhibit S)

70.    Agency tasked Plaintiff with serving as a Program Manager, Contracting Officer,
Contracting Officer Representative concurrently without providing necessary resources
and had Anthony Fugate performing the same duties at the same time as an anticipation
for Lisle dismissal.

71. Between March 7, 2019, and July 2019, the Agency denied Plaintiff Lisle reasonable accommodation request that was recommended and approved by Plaintiff primary care doctor.

72. April 5, 2019 – Lisle was now exhibiting duress from ongoing distress.  After doublechecking numerous times in her handbag to ensure she didn't have her phone. Plaintiff accidentally found phone hidden between papers when she got to her desk.   She committed a security incident and she self-reported immediately.   Her phone was confiscated and searched.   Video recording will reflect Lisle's commitment and devotion to her country. **(Exhibit T)**

73. When Lisle took the Warrant test, and her score was incorrectly graded and downgraded by Karen Palmer, her supervisor (Exhibit U)

74. September 2019 OCS/NGA denied Lisle request for Career Development and opportunity for continuous learning points **(Exhibit V)**

75. On October 28, 2019, Fugate a (non-contracting) professional issued a fiscal year 2019 performance appraisal rating **of 1.0 Unacceptable** (Both his rating and recommendation for dismissal were predetermined in advance **(Exhibit W)**

- On or about April 2019, Lisa Loison informed Lisle that personnel were talking openly that Lisle was on a performance plan.  A violation of Lisle's privacy act information

- During COVID and while in the Agency preplanning phase on or about March 2020, Plaintiff was banned from building without proper notification. She stated that when she returned to gather documentation to work from home, the only person who walked by Plaintiff desk was Dea Merchant. Plaintiff stated that Angelo Pappalardo, Anthony Fugate, and Kerry Blosser started calling her desk and left over six messages within less than 5 minutes to inform Plaintiff to leave the building immediately while other non-mission essential personnel on the OCSA side were in their sections.

- Plaintiff's supervisor Fugate refused to allow Plaintiff to participate in a joint session with him to develop SMART performance objectives that were consistent with the work she was performing

- December 2019 NGA consistently required Lisle to work outside of her the responsibilities for which she was hired (Program Manager, COR, Webmaster etc). During a junior CO Post Orientation (white and male) she was told to take notes.

76. January 2020 When Lisle provided customers guidance to customers in accordance with the regulations. Leadership undermines her authority to write her up and lower her evaluation rating (CTC Property Issue) **(Exhibit X)**

77. Beginning in February 2019 through May 2019, Plaintiff started to encounter technological issues, including being locked out of the network, unable to do one class, **(Exhibit AA)**

78. On July 1, 2019, Fugate (a non-supervisor) issued Plaintiff a negative mid-point review for Contracting, however he was not within the Contracting Career field which violated federal laws. He noted Lisle had not taken a warrant test and Lisle disagreed, and that Lisle was late on a class however Lisle was locked out of the system.

79. On 19 July 2019. Kelly Pickering identified opportunities for reassignment. Lisle made a request to be reassigned to several external organizations outside of OCS and within the NGA to include the Small Business Office. They were all denied however other personnel were approved for reassignment **(Exhibit N-1)**

80. Between July 2019 and November 2019, the Agency denied Plaintiff request for career change. The process started with Supervisor (Fugate), Career Manager (Kat Gadway) and Director (Kelly Pickering) they were denied however changes were given to other personnel **(Exhibit N-1)**

81. From December 29, 2019, Plaintiff was assigned to a Contract Specialist/non-Contracting Officer position in the Policy office, however the leadership team often directed her to sign other contracting officer's documentation that she did not have authority to sign.

82. Plaintiff completed the required contracting continuous learning classes to be approved for the next level approved by her supervisors on or about May 2019, however Plaintiff's managers denied two requests for developmental opportunities or the final class in Plaintiff's DOD Program Management. She also alleged the official documents and records were deleted from the system and she notified her supervisors. The same developmental opportunity was offered to Kelsey Nelson two years earlier, a junior white female Contracts Specialist. Palmer and Fugate were Plaintiff supervisors and Scott Stallsmith was Kelsey's supervisor **(Exhibit N-2)**

83. After coordinating with other personnel, 20 November 2020 Plaintiff filed a class complaint with the NGA's Equal Employment Opportunity ("EEO") Office after she exhausted her administrative remedies and oversight organizations to protect her safety and her children wellbeing. She addressed her complaint with David Coleman and Patsy Coleman and forwarded the draft documentation to Patsy Coleman **(Exhibit L)**

84. Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer to retaliate against an employee based on the employee's complaint of discrimination or opposition to employment discrimination.

85. Plaintiff engaged in protected activity by complaining of their unlawful treatment and opposing NGA's discriminatory practices.

86. Plaintiffs suffered retaliation and harm because of her protected activity, in violation of 42 U.S.C. § 2000e-3(a).

87. January 2022    During EEO Case Management Order, Lisle did not dispute her bases of claim who were reflected in ROI dated April 2017 which reflected  Race of (African American) Color (Black) National Origin (Jamaican) Sex (female)   and reprisal/retaliation ( Which included disparate treatment, harassment, Hostile work environment, Transfer, Performance Evaluation and multiple issues – During the 4 Jan meeting she and amended it to add Disability and the administrative Judge approved **(Exhibit AB)**. Plaintiff Provided all the claims and the Agency fragmented her claims and made them as 34 sub issues to a Hostile environment claim.

88. October 2019   Lisle was instructed by NGA Legal Counsel (Jack Rickert) to print off approximately 450 emails and take them to her Attorney as discovery. She challenged the request with both with her Attorney and NGA Attorney. She was not a subject matter expert on security classification, that was a Legal and Classification responsibilities. However, she was complying when at #137 Plaintiff noticed some of the information contained classified documentation. She stopped immediately and notified both her attorney and NGA Attorney. She was stuck she did not have the authority to determine derivative classification.   Walking out of the building with classified documentation would have jeopardized her security clearance and resulted in a security violation or worse. She addressed the issue again with both Attorneys and later with the EEOC Administrative Judge.   Plaintiff's Attorney told her, he was friends with Jack Rickert, NGA Attorney, so her confidence in his objective representation diminished.   She was unable to meet the suspense as a Pro Se to rebuttal the Agency's request for summary judgement Part#1 of her

fragmented case so it was dismissed.    She informed her Attorney that she would report him, and he returned her partial retainer.    She was without counsel **(Exhibit AC)**

89. NGA is employing Agency-wide performance evaluation policies that disproportionately result in high performance ratings for white or male employees and average (or lower) performance ratings for minority and women employees and Lisle.

**90.** Retaliating against her because she complained of discrimination including by subjecting her to further discrimination, harassment, retaliation, and denying her reasonable accommodations and discharging her.

91. Lisle applied for countless positions in and out of OCS to include the following positions that listed the Description, Desired Qualification; Position Summary, Duties, Emergency Essential Information, Critical Indicator Information, Span of responsibilities etc.  (1) The Acquisition Governance Team Lead; (2) Small Business Office Director (3) Supervisor NGA Representative to NATO; (4) Chief, Partnerships Division, International Affairs (5) Deputy Chief, US Air Force NGA Support Team; (6) Chief, Europe Branch  8) Contracts Specialist  -- Judy Harts and Tony Fugate's position,  (9) Developmental opportunity GA Liaison to HQ Air Combat Command, (10) Division Chief future Warfare, (11) Deputy Director, Mission Oversight and Compliance, (12) Budget Advisor, NGA Representative to the PDB.   She reached out to Admiral Sharpe, the Director of NGA and although Lisle qualified for most of them all.   They were all denied.  **(Exhibit N-1)**

92. Lisle's reputation was badly damaged when Dyah Goodman a Band 5 said in Patrick Malaney's Staff Meeting that Lisle was incompetent and obnoxious. The information was relayed back to Lisle by two different individuals in attendance.   When NGA forcibly tried to get the names, Lisle did not provide out of safety and fear for them, but Lisle provided enough information for an investigation **(Exhibit N-2)**

93. Lisle was humiliated when Patricia Hill, a Band V who came into the Policy section in 2019 to speak to Nadine Sellers and asked Lisle "Why her dress was so tight? Doesn't she know that they (OCS) were still not going to promote her".

94. Lisle endured hostility and yelling from both Karen Palmer and Danita Ladson.

95. Like Karen Palmer, Nancy Spaulding had given Lisle the similar ultimatum to find another job outside of NGA on 10 July 2019 Nancy Spaulding/SES during her investigation. Instead of protecting Lisle she said, "Off the record, "Why do you stay?" **(Exhibit N-3)**

96.  Plaintiff Lisle requests the relief set forth.

## COUNT V
## VIOLATION OF THE EQUAL PAY ACT 29 U.S.C. § 206(d)

97.  The NGA is an "employer" as defined by the Equal Pay Act, 29 U.S.C. §§ 203(d), 206.

98.  The Agency has willfully, knowingly and intentionally discriminated against Lisle in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206(d), as amended by the Equal Pay Act of 1963, by subjecting her to unequal pay on the basis of sex.

99.  The NGA discriminated against Plaintiff by paying lower wages than her value and treating her differently from and less preferably than white male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

100.  NGA knew or should have known that paying male and female employees working in the same position and performing substantially similar duties would violate the Equal Pay Act.

101.  The Agency caused, attempted to cause, contributed to, or caused the continuation of the wage rate discrimination based on sex and color in violation of the Equal Pay Act. Further, Defendants knew or showed reckless disregard for the fact that its conduct violated the Equal Pay Act

102.  As a result of the NGA's conduct alleged herein, including the Agency's willful, knowing, and intentional discrimination, Lisle suffered and continues to suffer tremendous harm, including lost wages, lost benefits, and other financial losses.

103.  These discriminatory performance evaluations led to unequal pay as well as discrimination in promotions at the NGA. For example, Lisle applied for two separate promotions to Team Lead positions—positions she was particularly qualified for given her extensive experience and role as an informal trainer of new employees. Not only did the NGA not select her for either promotional or developmental opportunities, it also did not bother to inform him of that fact. In contrast, white employees have applied for and received promotions to positions that were never even posted.

104.  The Agency is employing Agency-wide performance evaluation policies that disproportionately result in high performance ratings for white or male employees and average (or lower) performance ratings for minority and women employees and Lisle.

105. The discriminatory suspension, OIP, denial of bonuses, destruction of reputation, discriminatory evaluation all leads a violation of the equal pay act

106. Denial of meaning work that commensurate with Lisle experience, providing unfair and unjust evaluation ratings, denial of promotion and professional development

107. Plaintiff Lisle requests the relief set forth.

## COUNT VI

## VIOLATION OF THE ADA 42 U.S.C. § 12112, et seq.

108. Plaintiff Lisle brings this Count under the Americans with Disabilities Act, 42 U.S.C. § 12112, et seq., as amended ("ADA").

109. At all relevant times, the Agency was a covered "employer" within the meaning of the ADA and required to comply with its provisions.

110. At all relevant times, Lisle was a covered "employee" within the meaning of the ADA and entitled to its protections. At all relevant times, Lisle was a qualified individual with a disability within the meaning of the ADA. At all relevant times, Lisle had a disability that was covered by the ADA, that impacted one or more of her major life functions; and the Agency regarded her as having such an impairment.

111. At all relevant times, Lisle could perform the essential functions of her positions with the Agency with or without reasonable accommodation.

112. Between 7 Mar 2019 and July 2019 Lisle informed the Agency about her disability and requested reasonable accommodation, but the Agency denied the request. For about 5 months Lisle endured life threatening symptoms while NGA debated and justified why like should not be accommodated even with her doctor's recommendation and approval.

113. On April 16, 2019, Lisle met with Fugate to discuss reason accommodation needs. During the meeting, Fugate informed Lisle that a change in supervisor was outside the scope of the reasonable accommodation and Lisle reiterated that the Physician request asked for temporary reassignment. **(Exhibit Z)** On May 9, 2019, Lisle was Robbie Crite/EEO provided Lisle with additional guidance, after Lisle provided EEO regulations on reassignment. On May 16, 2019, Katherine Gadway, Contracts Career Service Manager provided Lisle with a list of 13 vacant Band 4 positions within her same department and told her she wasn't qualified for some of the ones on the list. Lisle

reiterated the Physician's recommendation of was temporary reassignment. The Agency discriminated and retaliated against Lisel by not properly processing her request for reasonable accommodation **(Exhibit Z).**

114. In October 2019, Plaintiff requested Advantage Fitness due to health reasons and chest pains, as a reasonable accommodation.   While other employees were allowed to exercise during the workday and help with distress.   Anthony Fugate and NGA denied Plaintiff was denied telling her once she did what she was told he will approve. **(Exhibit Z-1)**

115. Lisle's veteran social network recommended FMLA leave due to her disability when her health was noticeably declining.  So mid-May 2019, she expressed her intent to part discussions in FMLA to Anthony Fugate.  A week later he returned with guidance. Lisle took the information and discussed the situation with her military medical provider.  The Provider prepared the information however when Lisle turned, she could not locate Anthony Fugate, she was informed he was offsite in Chantilly for extended class approved by OCS.   Her managers knew about Lisle's disability, so Lisle processed the paperwork and secured it in her second line Supervisor Office for safeguard and sent Fugate an email. While on FLMA leave, NGA provided Lisle's personal email and phone to investigator Ms. Nancy Spaulding called and coordinated investigations while Lisle was on FMLA Leave. **(Exhibit Y)**

116. March 2020, when the global pandemic hit, Plaintiff requested a computer to work from home.   Her request was denied so she went into the office on Tuesdays and Thursdays. **(Exhibit Z-2)**

117. 6 June 2020, with only a learner's permit, Plaintiff dependent minor daughter rushed Plaintiff to the hospital during the Global Pandemic, while Lisle children sat outside Plaintiff was rushed into emergency surgery.   She was diagnosed with cancer.

118. Following her recovery, Lisle requested a computer to work from home and it was again denied.   While other personnel without tenure and disabilities were approved for computers to work from home. When a white female within OCS was diagnosed with cancer, Kelly Pickering and Nicole Pierce supported and assisted her.   She shared that OCS helped her to obtain disability benefits. However, when Plaintiff Lisle was diagnosed with cancer, she was dismissed from her 28-year career.

119.    September 2021, Lisle underwent her second major surgery to remove cancer that had
        spread to her lymph nodes after she was terminated.   While she was travelling to go to
        Pennsylvania Hospital, the Agency demanded that she participate in their EEO process.
        Lisle's father stepped in and said no.   As single mother and wounded warrior under
        doctor's care NGA took advantage of Lisle's failing health to dismiss her.   Furthermore,
        she was left to the devises of eager Attorneys whose only goal was financial gains.

120.    Lisle's disability affected her negatively, and despite explaining this to her managers and
        requesting accommodation for her disability, Lisle's supervisor and NGA used her
        disability as one more opportunity to discriminate and retaliate against her.

121.     As a result of NGA's conduct, Lisle and her children have suffered substantial damages,
        by the Agency's willful and intentional conduct.   Lisle has lost wages and other benefits,
        suffered embarrassment and humiliation, and her career has been irreparably damaged.

122.    130. Plaintiff Lisle requests the relief set forth below.

**COUNT VII**

## VIOLATION OF UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT (USERRA)

NGA is covered by the Veterans Preference Act, Veterans' Recruitment Appointment (VRA)
and Veterans Employment Opportunity Act (VEOA).   ADA affords Plaintiff Lisle free from
discrimination in civilian employment.   As veteran with disabilities, Lisle is entitled to
preference over others in hiring from competitive and are considered for special
noncompetitive appointment given preference well.    NGA had denied Lisle most of her
benefits during the hiring process.

131. Although Lisle provided all the required information during her hiring and onboarding to
show and establish, her veteran status.  NGA, Ladson and Malaney failed to approve her for a
disabled veteran leave program that was unique to NGA while they provide the benefit to males
and whites employees.  Although a Veteran, Ladson tried to deny Lisle's conversion from
"conditional term" to permanent status on the same basis as white or male employees.

132. Although a protected Veteran, the records that Lisle maintained and the ones that were
reflected in public records appear to be different.  For several years, Lisle was denied veteran

benefits and requested the necessary changes for a few years. They were denied while white males were not. **(Redacted SF 50s )**

Plaintiff Lisle requests the relief set forth.

## COUNT VIII
### 42 .S.C§ 1985 Conspiracy to interfere with Civil Rights

133 Anthony Fugate, Danita Ladson, Karen Palmer conspired with NGA Leadership to prevent and intimidate Plaintiff Lisle from holding an office and place of confidence under the United States and from discharging duties for which she was hired.

134 Anthony Fugate, Danita Ladson, Karen Palmer conspired with NGA Leadership to obstruct justice, intimidate Plaintiff Lisle and other witnesses from filing complaints against NGA.

135 NGA interfered when Lisle tried to participate in a class action lawsuit in defend and protect the black and female groups. NGA did not answer the request in a timely manner and then fired Lisle. The informal class action documentation was forwarded to Ms. Patsy Coleman on and about 20 November 2020 for review and on or about 11 December 2020 when Lisle drove into work her badge no longer worked. When she went to the visitor's center to inquire, she was told that she was debriefed, she was not. On 5 March 2021 her termination was finalize and she was robbed of her 28 Year Career of faithful service to this country. **(Exhibit M)**

136 In October 2019, the Agency made it difficult for Plaintiff to collect relevant information for EEO. When Lisle was denied access to her worksite. She had left behind her personal belongings to include professional resources, both electronic and hard copies. Even though she has demanded the return, the Agency has failed to do so.

137 October 2019 Lisle was instructed by NGA Legal Office (Jack Rickert) to print off approximately 450 emails with classified information. Attorney Jack Rickert conspired with NGA Leadership to obstruct justice, intimidate Plaintiff Lisle, and interfere with civil rights. **(Exhibit AC) (Exhibit AD)**

138 July – October 22, 2023, during a dispute from her contract employment – she was harassed, and her security clearance was threatened by Mr. Scott Nadeau, security manager and former NGA employee and JSI Leadership

**139** The Agency has disproportionally intercepted and monitors communications, to include penetration testing, communications monitoring, network operations and defense and counterintelligence investigation to target Lisle and minorities more than white and males **(Exhibit AA)**

140 NGA overclassified documentation to target marginalized minority groups, this overclassification hampers the ability to get the required documents to support discrimination cases and with civil laws and rights. This is not done to whites and male.

141 NGA systematically, unfairly, and unjustly lowered Lisle's ratings, denied her developmental opportunities and promotions, issued OIPs, suspensions and termination to willfully, knowingly, and intentionally limited Lisle's advancement IAW with Title Seven violations. Denying and blocking Lisle, a first-generation college educated black, female, veteran and her dependents from advancing fairly.   By denying Plaintiff Lisle her civil rights, this closed-door environment has block her and her dependents opportunities for generational advancement and wealth building, Plaintiff Lisle request relief **(Exhibit AD)**

## IV.  Prayer for Relief


142. WHEREFORE, in accordance with Federal Rules of Civil Procedure 8(a)(3) Plaintiff Lisle respectfully request that this Court find in favor of Lisle (ProSe) and against Defendants as follows:

a.    Declare that the NGA's acts, conduct, policies, and practices are unlawful and violate the federal statutes identified in the Counts alleged against them above.

b.    Declare that NGA engages in a pattern and practice of racial discrimination against racial minorities and women and employs policies and practices that have an unlawful disparate impact, Lisle.

c.    Order that the NGA stop discriminating and retaliating against racial minorities and women, and cease implementing policies and practices that have a disparate impact on racial minorities and women.

d.    Order Plaintiff be reinstated to her appropriate position, promotions, and seniority, and otherwise make Plaintiffs whole.

e.  Award Plaintiff the value of all compensation and benefits lost and that she will lose in the future because of NGA's unlawful conduct.

f.  Award Plaintiff compensatory and punitive damages and liquidated damages and impact for out-of-pocket expenses caused by the discrimination and impact.  Reimbursement for properties that were sold at a loss to provide for family and compensate Plaintiff and her children for the emotional harm suffered such as mental anguish, inconvenience, and loss of enjoyment of life.

g.  Liquidated Damages due to violation of the Equal Pay Act

h.  Restoration of leaves that were used and loss because of NGA discriminatory actions.

i.  Cancel the unwarranted punitive personnel action such as termination and suspension and all adverse records in her official personnel files and make her whole.

j.  Expunge adverse materials relating to the discriminatory employment such as dismissal, suspension, and negative evaluations the Agency record to include the Insider Threat Investigation

k.  Reinstatement and Retroactive placement in a government executive position for eight years lost.

l.  Raise all performance evaluations to "5s."

m.  Plaintiff asks the court to consider exemplary damages due to the misconduct of the defendant that was grossly and wantonly negligent or reckless and that the defendant's clearly exhibited intent to harm.  This will also serve as a deterrence measure against specific misconduct and encourages other personnel to speak up.

n.  Award Plaintiff prejudgment interest, attorneys' fees, expert, and other non-legal services such transcript cost, printing, copying and costs, as provided by law; and cost incurred directly by prevailing complaints with proper documentation.

o.  Award Plaintiff and all others similarly situated such other make whole equitable, injunctive, and legal relief as this Court deems just and proper to end the discrimination and fairly compensate Plaintiff and those similarly situated.

p. Plaintiffs ask the courts for a general prayer for any other relief that the court deems the
plaintiff is entitled to.

## DEMAND FOR A JURY TRIAL

143.   Plaintiff hereby demands a jury trial as provided for by Rule 38(a) of the Federal Rules of
Civil Procedure.

## V.   **Certifications and Closing**

Under Federal Rule of Civil Procedure 11, by signing below I certify to the best of my
knowledge, information and belief that this complaint: (1) is not being presented for an improper
purpose, such as to harass, cause any unnecessary delays, or needlessly the cost of litigation; (2) is
supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing
existing law; (the factual contentions have evidentiary support or if specifically so identified, will
likely have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

## VI.  **For Parties Without an Attorney**

 I agree to provide the Clerk's Office with any changes to my address where case-related papers
may be served.  I understand that my failure to keep a current address on file with the Clerk's
office may result in the dismissal of my case.

Respectfully submitted.

Date: April 17,  2024

Loreen L. Lisle
8792 Brook Estates Ct
Lorton VA 22079
Fairfax County
Phone: 703 334-1114
Email: Loreen.Lisle@gmail.com

# Exhibits Listing

Exhibit A     Lisle's Reputation prior to coming to NGA.

    A-1  -- Lisle Deployments to Kuwait

    A-2  -- Lisle Deployments to Iraq

    A-3 --  10+ Recommendations for Lisle's Character and reputation

    A-4 – Lisle Resume and one of her Contracting Warrant

    A-5 – A few of the countless "thank you" Lisle received from customers.

    A-6 – Lisle is committed to helping others.

Exhibit B    Except from State of Black promotion at NGA (All public Information

    B-1  Federal Agency admits to years of Racial discrimination article

    B-2  - Except from Justin Poole, Deputy Director Investigation

    B-2    Except from Ellen Ardrey SES at NGA

    B -3   Except from Discrimination data (FY 15 and FY 16)

Exhibit C     Termination paperwork.

Exhibit D     Publicly Available Article and recordings as testimonies.

    D -1 Article from the newspaper

    D -2    Records from the web of alleged discriminations

Exhibit E  Denial of Promotion due to false evaluation criteria

    E-1&2   Feedback to her supervisor that generated the initial retaliation.

    E 3    End of Year evaluation considerable low compared

Exhibit F     Denied proper feedback that was provided to her male counterparts.

Exhibit G    Advantage Fitness Request and Removal from System

Exhibit H     Agency attempted to remove Lisle without cause.

H-1 Ladson issue Lisle Informal Opportunity for Improvement Plan

H-2 Lisle communication with HD on informal OIP

H-3 Lisle was given a discriminatory rating and she rebutted.

**Lisle identified barriers to OCS effectiveness.**
**Inconsistent policy enforcement**
**Poor communication and lack of standardization**
**OCS Prohibited practices**

H-4 After the above "protective disclosure" Lisle alleged an agency wide collusion to willfully and  retaliate

Exhibit I   Ladson and Malaney disapprove disability benefits to attend wounded warrior health program over at Andrews Air Force Base.   Lisle is classified as a Wounded Warrior.

Exhibit J Training Denial and opportunities and numerous training.

Exhibit K.   Warrant Regulations and Interpretation of DODI 5000.66 by NGA Legal Director—The regulation that governs Defense Acquisition Workforce Improvement Act.

K-1 Lisle Interpretation based on Regulations and submitted into her EEOC for justification.   How can Anthony Fugate be a Contracting Supervisor?

Exhibit L.   Lisle's children' declaration

Exhibit M.   Informal Class Action Lawsuit submitted.

Exhibit N.  Instances where Lisle provided training and mentorship.

N-1 Lisle request Dozens of transfers, development rotation opportunities

N-2 Program Management requests remove from system.

N-3 Investigator, like Palmer telling Lisle she needs to leave NGA.

Exhibit O.  PeopleSoft notification about moving to Policy.

Exhibit P.   Reached out to Supervisors, internal Culture of respect representative, EEO, EEOC, NGA Ombudsman, NGA IG, Deputy Director, Directors,  IG the

Inspector General for help/ IC IGs. Secretary of Defense and constituent.   My children and I received no reprieve from the abuse behind NGA Close door.

Exhibit Q.  Removal of leave

Exhibit R    Another SES requested open discussion about

Exhibit S.  Supplemental timeline of incidents submitted to NGA EEO on discriminatory action and adverse Action under Karen Palmer

S-1 Lisle identified broken process in NGA

Baby FAR issue.

S-2    Meeting that initiated Angelo Pappalardo recommendation for Lisle makes her complaint to Ombudsman's office

S-3 Comp Time Issue

Exhibit T   Rating changed from 3.3 to 4.0  by outside leadership

Exhibit U  Materially adverse OIP to direct taking a warrant test.

Exhibit V  Rebuttal to Howard Pierce materially adverse Three day Suspension

Exhibit W  Timeline and adverse Actions by Agency Under Fugate's leadership/

Exhibit X  May 2019 Fugate, Pappalardo, Pierce and Dea Merchant retaliated against Lisle

Exhibit Y  FMLA Violations

Exhibit Z   Retaliation –Denial of Reasonable accommodation and referred for to Insider Threat Investigation

Z-1 Denial of Advantage Fitness

Z-2 Denial of Computer accommodations

Exhibit AA   Lisle unable to get into the network for about five months.

Exhibit AB   NGA Fragmentation of claims.

Exhibit AC   NGA General Counsel Interference

Exhibit AD Document from NGA System of Record saying Fugate was a non Supervisor—However he dismissed Lisle, Performed adverse actions on Lisle, emotionally damaged Lisle

Exhibit AE    Helping mentees with alleged discrimination. (Black females)

Date: April 22 2024

Loreen L. Lisle
8792 Brook Estates Ct
Lorton VA 22079
Fairfax County
Phone: 703 334-1114
Email: Loreen.Lisle@gmail.com

34